IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

                                                  OPINION AND ORDER

           Plaintiff,

                                                  09-cv-547-bbc
                                                  06-cr-141-jcs

     v.

WALTER R. BURNLEY,

           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Defendant Walter R. Burnley has filed a timely motion for post conviction relief under 28 U.S.C. § 2255, challenging the effectiveness of both his trial and appellate counsel. He alleges that trial counsel was ineffective in a variety of ways, such as not challenging the illegal search of his room and car and not preparing a defense. He contends that appellate counsel was ineffective because she refused to raise the issue of ineffective assistance of counsel, telling defendant it would be more helpful to him to raise this issue on a post conviction motion, and because she failed to advise him that he could seek a writ of certiorari to the Supreme Court.

      Defendant's complaints about his appellate counsel can be disposed of quickly. She

1

was absolutely right when she advised defendant to wait to raise his challenges to the effectiveness of his trial counsel until he filed his post conviction. The Supreme Court has made it plain that such challenges should be brought in a post conviction motion unless they are of such a nature that they can be resolved without going outside the trial record. Massaro v. United States, 538 U.S. 500, 504-05 (2003) ("In light of the way our system has developed, in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance. When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose."). A defendant runs a risk of losing his ability to pursue a claim of ineffective assistance if he raises the claim without having the necessary facts to support it. If the court decides the claim on direct appeal, he will be barred from raising it in a post conviction motion. United States v. Parker, 469 F.3d 1074, 1075 n.1 (7th Cir. 2006); United States v. Davenport, 986 F.2d 1047, 1050 (7th Cir. 1993) ("[A] defendant who presents an ineffective-assistance claim for the first time on direct appeal has little to gain and everything to lose.").

As for appellate counsel's failure to tell defendant that he could seek a writ of certiorari from the Supreme Court, this, too, was responsible advice. The chance of such a writ's being granted is minute, even if the petitioner has a strong claim of error. As will be

2

seen, defendant had no such claim. Any effort to obtain Supreme Court review of his case would have been a waste of time for him, his counsel and the Court.

## BACKGROUND

Defendant was charged in 2006 with the robbery by intimidation of several different banks in the Beloit, Wisconsin area. The record shows that after the fourth robbery, in May 2006, the Beloit police started looking for him and his confederate, Lisa Harding, in connection with the robberies. On May 19, the police stopped defendant as he was leaving a building at 909 Gerald Avenue, and placed him under arrest. A detective asked whether defendant lived at 909 1/2 Gerald Avenue; defendant said that he had just come from his girlfriend's house and gestured northward. He never stated that he lived at the Gerald Avenue address. In fact, for a short time he had been living there, albeit intermittently in the apartment of a man named Donald Elliot, from whom he was renting a room.

Shortly after the police placed defendant in a squad car, they met with the daughter of the owner of the Gerald Avenue building, who provided a key to Elliot's apartment. They entered the apartment, found Harding hiding in the living room area of the apartment and took her into custody. About this time, Elliot arrived and gave his consent to a search of the apartment, which uncovered a blouse and a purse.

When the police first stopped defendant coming out of the Gerald Avenue building,

they noticed a black Bonneville parked in front and asked defendant whether he had any vehicles. He said he did not, but hoped to buy one soon. Later that day, the police towed the Bonneville to the police garage, where they secured it in a private space. The next day, they obtained a search warrant for a search of the car and found incriminating evidence used against defendant at trial, including a purse like the one Harding had carried with her during one of the robberies and a newspaper article about a robbery at the First National Bank.

On May 26, after the police learned that defendant's girlfriend was calling Elliot to inquire about clothes belonging to defendant that might be in Elliot's apartment, they went back to 909 1/2 Gerald Avenue and conducted a search of Elliot's apartment with his consent. They recovered a number of evidentiary items, including pants, glasses and a dust mask, some of which were taken from the room in which defendant had been staying.

Harding entered a plea of guilty to the charges and was sentenced before defendant went to trial. At trial, she provided considerable evidence about the two bank robberies in which she assisted defendant. (She had no role in the first two.) Defendant's counsel cross examined her about her crack cocaine addiction, a previous forgery conviction, her "cuffing" of some of the bank proceeds before she gave the remainder to defendant and her incentive to testify favorably for the government to increase her chances of obtaining a Rule 35(b) sentence reduction.

The jury found defendant guilty of all four of the bank robberies. He was sentenced

4

to a term of imprisonment of 262 months.  He appealed, raising only one issue, which was whether the evidence of intimidation by him or his codefendant was so tenuous that the convictions required reversal.  The court of appeals found the evidence sufficient to sustain the verdict.

OPINION

The test for constitutional ineffectiveness of counsel was established in Strickland v. Washington, 466 U.S. 668 (1984).  The Supreme Court held that proving a lawyer ineffective requires a defendant to show that the lawyer's work fell below the lowest level of competence.  The defendant must show "that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment." Id. at 687.  Merely showing that counsel erred in a few specific respects may not be enough to show incompetence; counsel's work must be evaluated as a whole.  Id. at 690; see also Peoples v. United States, 403 F.3d 844, 848 (7th Cir. 2005) ("it is the overall deficient performance, rather than a specific failing, that constitutes" ineffectiveness).  Even if a defendant can prove that his counsel was ineffective, he still must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.

It is well settled law that mere unsupported assertions are not enough to persuade a court to hold an evidentiary hearing, much less to grant a petition. The burdens of production and proof that fell on the government at a defendant's criminal trial shift entirely when the defendant files a post conviction motion. Then it is the defendant who must produce enough evidence to convince the court that he was convicted unconstitutionally.

Because it is defendant's burden to make this showing, the Court of Appeals for the Seventh Circuit has held that before the district court holds an evidentiary hearing on any post conviction issue, the defendant must file a detailed and specific affidavit showing that he has actual proof to support his allegations. Galbraith v. United States, 313 F.3d 1001 (7th Cir. 2002). When it comes to an allegation of an inept or incomplete investigation, a petitioner must provide the court "sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." Hardamon v. United States, 319 F.3d 943, 951 ((7th Cir. 2003).

### A. Trial Counsel's Alleged Failure to Prepare a Defense

Defendant has alleged many ways in which counsel failed him at trial. His initial complaint is that counsel did nothing to prepare a defense. He lists a plethora of ways in which he says that counsel dropped the ball in this respect, none of which are supported sufficiently to require further consideration.

6

Defendant starts by alleging that counsel failed to follow up on defendant's alibi witnesses, but does not say who his alibi witnesses were or what exculpatory testimony they might have been able to provide. Because he has not supplied this basic information, it is not necessary to consider this allegation. Defendant identified two people in his reply brief, dkt. #11 at 2, but he did not say anything about who they are or what they would say about his whereabouts at the times of the robberies. He complained that counsel did not obtain certain surveillance tapes from two gas stations that would show he was not at the banks at the time of the robberies, but he did not say why the tapes would be exculpatory. There is no way even to know whether the tapes would have been in existence by the time counsel was appointed.

Next, defendant complains about his trial counsel's alleged failure to interview the government's witnesses before trial. He does not say what counsel would have learned had he done so, which makes it unnecessary to evaluate this allegation, if it were even possible to do so.

Defendant criticizes counsel's failure to hire an identification expert to analyze the bank surveillance tapes. Again, he does not explain what such an analysis would have shown and how it would have helped him. I can speculate that he thinks it would have proved that he was not the person on any of the tapes, but speculation does not carry the day for defendant. He must have evidence, not just guesswork, to show both that any minimally

7

competent lawyer would have hired such an expert and that the tapes would have showed that he was not present, not just that it was difficult to tell whether he was. Without this, his criticism of this omission by his counselwarrants no further investigation.

In a related vein, defendant alleges that counsel was ineffective in not finding a DNA expert to challenge the DNA results on items seized from defendant's room and in not seeking DNA samples, fingerprints or palm prints. As with the identification expert, defendant has not explained what a DNA expert would have contributed in this case. The government did not introduce any DNA evidence from defendant's clothes or from any finger or palm prints. Defendant may be arguing that an expert would have been able to find the DNA of another person on the clothes taken from his bedroom or lift incriminating fingerprints from one or more of the banks. This might be so, but it is not so likely a possibility that any competent lawyer would have devoted resources to such a search. Instead, the reasonably competent lawyer would do as defendant's counsel did, which was to call as a witness an employee of the Wisconsin State Crime Laboratory, who could testify that he had checked five latent fingerprints and concluded that they could not be matched to either defendant or Lisa Harding.

Defendant takes issue with the manner in which his counsel cross examined the government's witnesses regarding their ability to identify him or Harding. He does not assert that counsel failed to cross examine the witnesses vigorously. Rather, his point seems

8

to be that counsel should have emphasized the bank tellers' relatively lengthy opportunity to have observed the robbers, thereby making the implicit point that their inability to recognize defendant at trial is evidence that he was not the robber. This is a strategic dispute between counsel and defendant; not something in which courts interfere.

Defendant complains that his counsel failed to use Harding's prior inconsistent statements to impeach her trial testimony, but the inconsistencies he identified would not have helped his defense. They might have supported his contention that Harding was an unreliable witness but at the cost of introducing damaging evidence about him and his manipulation of Harding. For example, Harding told the police that she robbed a bank to get money she owed to defendant, that defendant usually paid for her in cigarettes and an eight-ball of crack cocaine and that he carried a knife. Later, she told the police she robbed two banks, that defendant had told her about robbing other banks, including some in Minnesota and that he carried a gun. Counsel wisely limited his cross examination of Harding to her longstanding, intense crack cocaine addiction, her prior conviction for forgery, her "cuffing" some of the cash from the robberies before she gave the rest to defendant and the possibility that she would be eligible for a reduced sentence if she testified favorably for the government. Trial Tr., dkt. #74, at 217-28.

Finally, defendant attacks his counsel's failure to challenge the sealing of certain evidence from Harding's presentence report about her mental health that would have

9

impeached Harding's credibility. This is not an issue. Defendant has not shown that counsel's decision not to use the evidence would have prejudiced him; to do this, he would have to show that the court would have allowed counsel to introduce the evidence. Having reviewed the materials myself and reviewed the transcript of the discussion before the court on the morning of trial, Trial Tr., dkt. #74, at 1-12 - 1-14, I am convinced that the court would not have allowed the evidence to be used, primarily because it is not evidence of impaired capacity to perceive, recall or relate the events about which the witness is testifying. United States v. Lindemann, 85 F.3d 1232, 1243 (7th Cir. 1996) (listing five acceptable methods of attacking credibility of witness: (1) attacking witness's general character for truthfulness; (2) showing that, prior to trial, witness made statements inconsistent with trial testimony; (3) showing that witness is biased; (4) showing that witness had impaired capacity to perceive, recall or relate events about which witness is testifying; and (5) contradicting substance of witness's testimony).

### B. Trial Counsel's Failure to Move for Judgment of Acquittal

Trial counsel did not move for a judgment of acquittal under Fed. R. Crim. P. 29 at the end of the government's case. Defendant argues that this is more evidence of counsel's ineffectiveness, but he is wrong. Moreover, even if it were, defendant would have to show that the failure prejudiced him, which he has not done. It is improbable that Judge Shabaz,

who presided over the trial, would have granted the motion, in light of all the evidence of defendant's guilt that the government presented. Motions for judgment of acquittal are notoriously difficult to win because the court can grant such a motion only if it finds, after viewing all the evidence in the light most favorable to the government, that there is no possibility the government could not prove the defendant guilty.

C. Trial Counsel's Failure to Challenge the Searches of Defendant's Car and Room

Defendant believes that all three of the searches involved in this case were undertaken in violation of the Fourth Amendment: the search of his Bonneville on May 20, the May 19 search of Elliot's apartment and the May 26 search of defendant's room in Elliot's apartment. As the court of appeals has held, when the ineffectiveness issue is a defaulted Fourth Amendment claim, the starting point is deciding whether the claim would have been meritorious. United States v. Stewart, 388 F.3d 1079, 1084 (7th Cir. 2004).

The search of the Bonneville was conducted under the authority of a search warrant. According to the documents that defendant attached to his reply brief, the car was towed on May 19 and searched on May 20, after the warrant for the search warrant had issued. Defendant has not suggested that the warrant was invalid or that the police had no right to remove the car to a safe place; therefore, he has no basis on which to challenge the constitutionality of this search.

11

The two searches of Elliot's apartment were undertaken without a search warrant. For that reason, they are "considered per se unreasonable and a violation of the Fourth Amendment unless an established exception applies." United States v. Henderson, 536 F.3d 776, 779 (7th Cir. 2008) (citing Katz v. United States, 389 U.S. 347, 357 (1967). One well established exception is voluntary consent given by a person with authority, "which could be the occupant of the home or premises as well as any third parties who have 'common authority over or other sufficient relationship to the premises or effects sought to be inspected.'" Id. (quoting United States v. Matlock, 415 U.S. 164, 171 (1974); see also United States v. Fields, 371 F.3d 910, 914 (7th Cir. 2004) (holding that consent may be obtained "either from the person whose property is searched, or from someone, such as a spouse, with actual or apparent authority over the premises").

Before the police undertook either of the two searches of Elliot's apartment, they had secured his consent to the searches. As the primary tenant of the apartment, Elliot had both apparent and actual authority to consent to a search of the unit. Moreover, the first time the police visited the apartment, defendant had just indicated to them that he lived elsewhere.

Defendant focuses on the second search of Elliot's apartment on May 26, denying that Elliot had any authority to let the police enter the bedroom defendant had been renting, even if he had authority to allow a search of the other areas of the apartment. Defendant's

12

point might have some force if defendant had adduced evidence that he had any reasonable expectation of privacy in the room, such as proof that he had installed a lock on the bedroom door and kept the door locked whenever he was out of the room. (Of course, this assumes that there was a door to the bedroom; defendant does not say there was. The record shows that the apartment had no electricity; it would not be surprising if the rooms lacked doors as well.) In any event, it is evident that defendant did not lock his room because neither Elliot nor the police had any problem getting into the room to search it on May 26.

The legitimacy of relying on Elliot's authority to allow the search is not diminished by the fact that the police were responsible for defendant's absence. United States v. Parker, 469 F.3d 1074, 1078 (7th Cir. 2006) ("Consent to warrantless search by someone with common authority over premises is valid as against an absent, non-consenting person with whom the authority is shared" even when the police are responsible for absence of non-consenting person) (citing Matlock, 415 U.S. 164).

In short, any challenge by defendant to the legitimacy of the three searches would have been futile. Accordingly, there is no basis for finding that trial counsel's failure to file a suppression motion would have prejudiced defendant.

I conclude that defendant has failed to show that he was denied his constitutional right to the effective assistance of counsel.

D. <u>Motion for Sanctions</u>

In addition to his motion for post conviction relief, defendant has filed a motion seeking the imposition of sanctions on Assistant United States Attorney John Vaudreuil, who prosecuted the case against him. Dkt. #10, case no. 09-cv-547-bbc. He alleges that Vaudreuil was untruthful when he stated in his brief in response to defendant's § 2255 motion, dkt. #7, at 15 n.3, that he was unaware of the contents of the sealed order entered by United States Magistrate Judge Crocker in the criminal case, dkt. #54, and when he said that there was no DNA, fingerprint or palmprint evidence. <u>Id.</u> at 14.

Defendant maintains that Vaudreuil had to have known the contents of the sealed order because he discussed it at the conference with the judge on the morning of trial. Reviewing the record, I can see why Vaudreuil's statement in his brief seems suspicious to defendant, but I can also see a logical and legitimate explanation for it. The magistrate judge's sealed order was one granting defendant's ex parte request to review portions of Lisa Harding's presentence report. Nothing on the docket sheet identified the nature of the request or of the order. At the pretrial conference, the court asked whether counsel would be raising any issue regarding the use of information in Harding's presentence report at trial. Vaudreuil started to respond that he had presumed that defendant would not be seeking to introduce any such information, adding that he had "presumed, and perhaps incorrectly, the way the magistrate's order was written," when Judge Shabaz broke in to say he'd read "the

14

ruling." Dkt. #74 at 1-12. Neither Judge Shabaz nor Vaudreuil identified the order or ruling to which he was referring, leaving it unclear whether they were talking about the same order and, if so, which one. However, it is not probable that Vaudreuil would say in the presence of the court and opposing counsel that he had read a sealed, ex parte order he had to right to see. Doing so would expose him to the court's wrath or worse. Of course, it is not impossible that he read it and that he was referring to it, but the possibility is too slim to support the imposition of sanctions. As the assistant prosecuting the case against both Harding and defendant, Vaudreuil would have been familiar with the contents of Harding's presentence report, making it understandable why he could discuss with the court the propriety of using any of the information from the report at trial.

As to Vaudreuil's statement about DNA, fingerprint and palmprint evidence, he was being accurate when he said there was no such evidence. Defendant's counsel brought out at trial the fact that the only potential finger and palm prints sent to the state crime lab were too incomplete to be compared to existing prints on file. Defendant says that Vaudreuil was untruthful when he said there was no DNA analysis done of the items taken from defendant's room, but he is misquoting Vaudreuil's statement in his brief. Vaudreuil said only that there was no DNA evidence for trial. Dkt. #7 at 13-14.

Defendant's motion for sanctions will be denied.

15

### E. Certificate of Appealability

Because defendant has failed to show that he has any ground for reversal of his convictions, I am denying his § 2255 motion. Thus, it is necessary to address the issuance of a certificate of appealability under Rule 11 of the Rules Governing Section 2255 Cases in the United States District Courts.

A certificate of appealability shall issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to make this showing, a defendant must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893, n.4 (1983)).

Although Rule 11 allows the court to direct the parties to submit arguments on the question of issuing a certificate of appealability, it is unnecessary to do so in this instance. Defendant has had ample opportunity to show that his conviction was unconstitutional. No reasonable jurist would believe from the evidence that defendant has adduced that his motion has any merit. Defendant's assertions that his attorney was ineffective in various ways are not ones that judges would consider debatable.

ORDER

IT IS ORDERED that defendant Walter J. Burnley's motion for post conviction relief under 28 U.S.C. § 2255 is DENIED, as is his motion for sanctions. No certificate of appealability will issue.

Entered this 18th day of December, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

17